[Cite as *In re F.F.*, 2023-Ohio-4166.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

In re F.F., P.F.

Court of Appeals Nos.  E-23-027
E-23-028

Trial Court Nos.  2021JN0025
2021JA0004

**DECISION AND JUDGMENT**

Decided:  November 17, 2023

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Lorie K. Brobst, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is a consolidated appeal from a judgment of the Erie County Court of

Common Pleas, Juvenile Division, which terminated the parental rights of appellant,

father, and granted custody of the above-captioned minor children, F.F. and P.F., to

appellee, the Erie County Department of Job and Family Services (ECDJFS).  For the reasons set forth below, this court hereby affirms the judgment of the trial court.

{¶ 2} ECDJFS initially became involved in this matter in 2019, three years prior to filing the July 25, 2022 motion for permanent custody of the children from which this appeal arises.  On May 3, 2021, ECDJFS reunified the children with appellant and their mother, following temporary custody and the provision of support services from June, 2019 through May 3, 2021.

{¶ 3} On May 4, 2021, the day after reunification, it was reported to ECDJFS by law enforcement that appellant and the mother had both relapsed into drug abuse, the predominant issue underlying this case.  Appellant was arrested and charged with child endangerment, domestic violence, a community control violation, and tested positive for fentanyl.  Appellant had consumed fentanyl and alcohol, and threw, or alternatively, dropped, P.F., who was approximately six-months old at the time.  The mother, who is not a party to this appeal, also tested positive for drugs.  She refused to cooperate with law enforcement or ECDJFS following the above-described incident.

{¶ 4} On May 14, 2021, following the investigation into the May 4, 2021 incident, ECDJFS filed a complaint in neglect and dependency regarding the minor child F.F., and a complaint in abuse, neglect, and dependency regarding the minor child, P.F.  On June 18, 2021, the trial court adjudicated F.F. to be neglected and dependent, and adjudicated P.F. to be abused, neglected, and dependent.  On July 21, 2021, ECDJFS

2.

approved a case plan outlining the support services being implemented. The case plan was incorporated into the dispositional orders. On May 24, 2022, the trial court extended the jurisdiction of ECDJFS for an additional six months.

{¶ 5} On July 25, 2022, ECDJFS filed a motion requesting permanent custody of the children. The record reflects that ECDJFS was involved in the provision of services since F.F. was approximately eight months of age, and was involved in the provision of services for the entirety of P.F.'s life. On November 2, 2022, the trial court extended the jurisdiction of ECDJFS for an additional six months.

{¶ 6} On February 9, 2023, the trial court began a two-day permanent custody hearing. Appellee first offered the testimony of Lauren Miller, the ECDJFS caseworker assigned to the case. Miller testified that her initial involvement began in June 2019, following the report of an incident in which the mother sold drugs from the family residence in the presence of F.F., and additional incidents in which F.F. was left alone at the family residence, while the parents were at other locations engaged in drug-related activities. Miller next testified that P.F. was born during the pendency of F.F.'s case, and P.F. was also placed into ECDJFS protective custody and supervision.

{¶ 7} Miller testified that on May 4, 2021, the day after reunification, law enforcement reported to ECDJFS that a serious, new incident had taken place. Both parents relapsed, consumed fentanyl, became embattled in domestic violence, and in the course of these events, appellant either threw or dropped P.F. on the floor. Appellant was

3.

subsequently charged with child endangerment, domestic violence, and a community control violation. Both parents tested positive for drug consumption.

{¶ 8} Miller's testimony detailed appellant's unabated pattern of participating in substance abuse services, including placement in multiple residential drug treatment facilities, but relapsing after short periods of sobriety. Miller testified that following the commission of a probation violation in July, 2022, appellant was placed into another residential drug and alcohol treatment facility. Appellant tested positive for fentanyl, cocaine, and methamphetamines. Miller testified that in January 2023, shortly before the permanent custody motion underlying this appeal was filed, appellant relapsed again, testing positive for fentanyl and cocaine. Miller testified that despite the provision of numerous drug and alcohol related services over a time period spanning nearly four years, appellant had not secured sustained sobriety.

{¶ 9} Miller further testified that appellant failed to comply with case plan services regarding marriage counseling sessions, which were required due to appellant's stated intent of reuniting with the mother, with whom appellant shares a history of mutual drug and alcohol abuse and domestic violence.

{¶ 10} Miller next testified that the children have been placed together, since May 14, 2021, in the same foster home. The placement has been successful, with the children thriving, and the foster family demonstrating the ability to meeting the special needs of the children, including F.F.'s autism, and expressing a desire to adopt both of

4.

the children. Miller concluded that although appellant loves his children, he has not demonstrated the ability to provide a safe, permanent home environment for them. As such, Miller testified that it is in the best interest of the children for permanent custody to be granted to ECDJFS.

{¶ 11} Nicholas Smith, the court appointed guardian ad litem, next testified. Smith emphasized his concerns about the recurrence of appellant's drug abuse relapses, and with appellant's engagement in criminal activity subsequent to relapses, and how that impacts appellant's ability to safely parent the children. Smith noted that appellant has been on community control on an ongoing basis since September 2019, and that his felony convictions include drug offenses, burglary, domestic violence, and community control violations. Smith testified that although it ideally would be his preference to furnish appellant additional time to work on his issues, he concurred that it is in the best interest of the children for permanent custody to be granted to ECDJFS.

{¶ 12} Patricia James, the CASA coordinator, next testified that although appellant loves his children, based upon the ramifications of appellant's unresolved drug abuse issues, she likewise concurred that it is in the best interest of the children for permanent custody to be granted to ECDJFS.

{¶ 13} Appellant next testified to the trial court. Appellant testified that he became a heroin addict when he was in his 20s. Appellant testified that he first entered a residential drug treatment facility in 2016, seven years prior to the instant case.

5.

Appellant enumerated the most recent residential drug treatment facilities in which he had been placed by ECDJFS, including Surest Path in Fremont, Road to Hope in Sandusky, Road to Hope in Elyria, and OneEighty in Wooster. Appellant conceded that he has been unable to retain sobriety, and that he continues to relapse when he experiences stress. Appellant further testified that although he recognizes that his relationship with the mother, to whom he is still married, is toxic and triggering, he nevertheless still loves her and does not rule out reuniting with her. Appellant conceded that he had relapsed and consumed drugs on multiple occasions, particularly during the timeframe of December, 2022, through January, 2023. Appellant attributed his recurring relapses to experiencing stress. Appellant acknowledged that he has never served as a caregiver for his children for more than a two-day period of time. Appellant acknowledged F.F.'s autism diagnosis, but expressed uncertainty about the validity of the diagnosis.

{¶ 14} Lee Jacobs, appellant's drug court coordinator, next testified that although appellant had been compliant with participating in drug court services, appellant accumulated five positive drug test results during the period of his drug court oversight. Christina Kaman, appellant's probation officer, likewise testified as to appellant's unbroken pattern of drug abuse relapsing.

{¶ 15} Dawn Peters, appellant's substance abuse counselor, next testified that appellant was diagnosed to have severe opioid use disorder, mild cannabis use disorder,

6.

and chronic viral hepatitis. Peters testified that appellant attributed his December, 2022 drug relapse to having "a feeling" that the trial court would not find in his favor on the then-pending motion for permanent custody. Appellant tested positive for cocaine and fentanyl. Peters testified that appellant relapsed again in January, 2023, testing positive for cocaine, fentanyl, and methamphetamines.

{¶ 16} Appellant's sister next testified that while she would support appellant if custody of the children was returned to him, she conceded that she had declined to complete paperwork provided to her regarding same by ECDJFS because she, "already has four children of her own."

{¶ 17} On April 24, 2023, the trial court found, pursuant to R.C. 2151.414(D)(1), that it was in the best interest of the children to grant permanent custody of them to ECDJFS. In support, the trial court noted that the children are, "[I]ntegrated into [their] foster home and appear comfortable and happy there. Despite her autism diagnosis, [F.F.] has made significant developmental improvements while residing with foster parents." R.C. 2151.414(D)(1)(a). The trial court next noted that both the G.A.L. report and the CASA report consistently concluded that granting permanent custody of the children to ECDJFS was in their best interest. R.C. 2151.414(D)(1)(b). The trial court further noted that both of the children had been in the custody of ECDJFS for 12 or more months of a consecutive 22-month period. In conjunction, the trial court noted that the children had been in the custody of ECDJFS for the bulk of their respective lifetimes.

7.

R.C. 2151.414(D)(1)(c). The trial court also noted that appellant's chronic drug abuse issues, the lack of an available relative placement, and the fact that the May 3, 2021 reunification lasted a day, all reflect the need for a legally secure placement for the children. R.C. 2151.414(D)(1)(d).

{¶ 18} The trial court highlighted that, despite four years of ongoing services being provided through ECDJFS, appellant's most recent drug relapse had occurred after appellant elected to reach out to one of his former drug dealers, ostensibly for assistance in finding a car to purchase. Although appellant did not acquire a car, appellant did secure drugs and relapse.

{¶ 19} Lastly, the trial court delineated the many services furnished to appellant by ECDJFS, in an attempt to achieve a second reunification, including substitute care services, counseling services, drug and alcohol assessments and residential treatment services, visitation services, autism services, and case management services. Given these facts and circumstances, the trial court found that, "reasonable efforts were made to make it possible for the [children] to return home."

{¶ 20} Accordingly, the trial court determined it to be in the best interest of the children for permanent custody of them to be granted to ECDJFS, holding, "[P]ermanent commitment * * * [to ECDJFS] is in the best interest of the child[ren]." Mother did not appeal. Appellant timely appealed.

8.

{¶ 21} In the sole assignment of error, appellant maintains that the trial court erred in finding it in the best interest of the children to grant permanent custody to ECDJFS and, in conjunction, in finding that ECDJFS had undertaken reasonable efforts towards reunification with appellant. Appellant argues that the trial court's granting of the motion for permanent custody to ECDJFS was against the manifest weight of the evidence.

{¶ 22} R.C. 2151.414(B) establishes that in order for a trial court to grant a motion for permanent custody it must be shown by clear and convincing evidence that,

(1) one or more of the conditions in R.C. 2151.414(B)(1)(a) through (e) applies and (2) a grant of permanent custody is in the child's best interest." As applied to the instant case, appellant's appeal challenges the second, best-interest prong of the above-quoted evidentiary threshold. As applied to permanent custody cases, the Ohio Supreme Court has defined clear and convincing evidence as evidence sufficient for the trier of fact to form a firm conviction or belief that the essential statutory elements for a termination of parental rights have been established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 23} The corresponding statute defining best interest of the child considerations, R.C. 2151.414(D)(1), establishes that,

In determining the best interest of a child * * * the court shall consider all relevant factors, including, but not limited to, the following: (a) The

interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) The custodial history of the child; (d) The child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 24} In conjunction with the above-quoted statutory predicate best interest of the child analysis, as held by this court in *In re T.J.*, 180 N.E.3d 706, 2021-Ohio-4085, ¶ 40 (6th Dist.),

We review a trial court's determination any permanent custody case under a manifest-weight- of-the-evidence standard. *In re P.W.*, 6th Dist. Lucas No. L-12-1060, 2012-Ohio-3556, 2012 WL 3199395, ¶ 20. In doing so, we must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the decision must be reversed. *State v.*

*Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). But, while we review the evidence and consider the witness' credibility, we must be mindful that the juvenile court, as the trier of fact, is in the best position to weigh the evidence and evaluate testimony. *In re P.W.* at ¶ 20. Its discretion in determining whether an order of permanent custody is in the best interest of the child 'should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.' (Internal quotation marks and citations omitted.) *In re C.P.*, 10th Dist. Franklin No. 08AP-1128, 2009-Ohio-2760, 2009 WL 1653556, ¶ 10.

{¶ 25} In support of this appeal, appellant argues that the trial court's best interest of the children finding was not shown by clear and convincing evidence. We do not concur.

{¶ 26} Appellant asserts, "It is simply not in the children's best interest to be placed in the permanent custody of ECDJFS." Appellant simultaneously concedes that, "The children were removed * * * due to serious [drug] addiction and placed in foster care."

{¶ 27} The record of evidence reflects that ECDJFS initially became involved in June 2019, upon drug abuse and trafficking issues impacting F.F. first being reported. ECDJFS provided services to the family from June 7, 2019 through December 20, 2020.

11.

During that timeframe, P.F. was born and incorporated into the orders and services. On May 3, 2021, following this 18-month period of ECDJFS involvement and services, the children were reunified with the parents and ECDJFS closed the case.

{¶ 28} Unfortunately, on May 4, 2021, the day after reunification, it was reported to ECDJFS that both parents had relapsed and were consuming drugs again. Appellant had dropped or thrown P.F. during an altercation with the mother and was arrested for child endangerment, domestic violence, and probation violations. Appellant tested positive for fentanyl the day after reunification.

{¶ 29} The record reflects that case plan services for appellant were implemented encompassing the range of unresolved issues, including drug and alcohol services, domestic violence services, and housing services. The record reflects that despite the resumption of intensive services for appellant, appellant's drug abuse relapses continued to regularly recur. In July 2022, following a drug-related probation violation, appellant tested positive for cocaine, methamphetamines, and fentanyl. Testimony demonstrates that ECDJFS continued to work with appellant, placing appellant in at least four additional residential drug treatment facilities, without success. It is undisputed that appellant relapsed again in January, 2023, shortly before the subject motion for permanent custody action was filed by ECDJFS. According to his own testimony, appellant would not foreclose the possibility of reuniting with the mother, despite his

12.

acknowledgment that their relationship has consistently been accompanied by drug abuse and domestic violence.

{¶ 30} Unrefuted evidence was presented to the trial court demonstrating that the minor children are thriving in their foster home, are bonded to the foster parents, have successfully been in this foster home for the majority of their lives, are receiving needed specialized care from the foster parents, and the foster parents would like to adopt both of the children. The record establishes R.C. 2151.414(D)(1)(a) evidence favoring the best interest of the child determination.

{¶ 31} The testimony of the ECDJFS caseworker, the G.A.L., and the CASA coordinator, all consistently establish that, based upon their involvement in this case, it is in the best interest of the children for permanent custody to be granted to ECDJFS. The record therefore also establishes R.C. 2151.414(D)(1)(b) evidence favoring the best interest of the child determination.

{¶ 32} The record also establishes that ECDJFS first took temporary custody of F.F. on June 7, 2019, when F.F. was approximately eight-months old and that P.F. was subsequently born and taken into temporary custody. Other than the May 3, 2021 one-day reunification, the children have been in ECDJFS custody and foster care placement for nearly the entirety of their lives. The record therefore reflects R.C. 2151.414(D)(1)(c) evidence favoring the best interest of the child determination.

13.

{¶ 33} As previously stated, the record of this case reflects that appellant's drug abuse and addiction, marked by recurring relapses despite 4 years of ECDJFS services and placement in numerous residential drug treatment facilities, persists. Efforts to find a viable alternative relative placement were unsuccessful. Appellant's sister declined to fill out agency paperwork, stating that she has, "four children of my own." The record therefore reflects R.C. 2151.414(D)(1)(d) evidence favoring the best interest of the child determination.

{¶ 34} Lastly, the trial court found that (E)(7) to (11) factors were not applicable and that ECDJFS did undertake reasonable efforts towards reunification, including, but not limited to, drug and alcohol assessment, services, and residential treatment, domestic violence related services, visitation related services, specialized autism treatment related services, substitute care services, and case management services, including efforts to secure an alternative relative placement.

{¶ 35} We have carefully reviewed and considered this matter. We find that the trial court's R.C. 2151.414 best interest determination, and the reasonable efforts determination, were supported by clear and convincing evidence. Upon weighing the evidence, reasonable inferences, and considering witness' credibility, we find that appellant has not demonstrated that the trial court clearly lost its way in resolving evidentiary conflicts so as to cause a manifest miscarriage of justice. Accordingly, we

14.

find that the trial court's decision was not against the manifest weight of the evidence. Appellant's assignment of error is found not well-taken.

{¶ 36} On consideration whereof, the judgment of the Erie County Court of Common Pleas, Juvenile Division, is hereby affirmed. Pursuant to App.R. 24, costs of this appeal are assessed to appellant.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                                      _____
                                                          JUDGE
Christine E. Mayle, J.         

                                           _____
Gene A. Zmuda, J.                                                     JUDGE
CONCUR.

                                           _____
                                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.